FILED

04/13/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0336

DA 20-0336

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 87

MARY E. VanBUSKIRK and ROGER A. BARBER,

      Plaintiffs and Appellants,

    v.

PATRICIA DOW GEHLEN and RAYMOND G. GEHLEN, Trustees,
GEHLEN PATRICIA DOW TRUST,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DV-14-126
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Samantha P. Travis, Randall S. Ogle, Ogle, Worm & Travis, PLLP,
Kalispell, Montana

      For Appellees:

          Patricia Dow Gehlen, Raymond G. Gehlen, Self-represented, Castle Pines,
Colorado

Submitted on Briefs:  December 16, 2020

Decided:  April 13, 2021

Filed:

                         Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1     Plaintiffs Mary VanBuskirk and Roger Barber (VanBuskirks) appeal the May 2018, May 2019, and June 2020 judgments of the Montana Twelfth Judicial District Court, Hill County, compelling them to survey a roadway easement previously adjudicated by declaratory judgment in 2016, denying their motion for clarification of the subsequently discovered ambiguity between the metes and bounds description and accompanying map depiction of the easement in the underlying 1987 grant, and rescinding its prior awards of discretionary attorney fees and costs on the judgment.  We address the following restated issues:

> 1.  *Whether the District Court erred by sua sponte ordering VanBuskirks to survey the 1987 grant, subsequently denying their resulting motion for clarification, and rescinding their prior awards of attorney fees and costs?*
>
> 2.  *Whether the District Court erroneously denied VanBuskirks' motion on remand for additional attorney fees incurred on appeal in VanBuskirk I?*

We affirm in part, reverse in part, and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     This is the latest installment in the continuing saga, dating back to 1980, of a contentious dispute over a private roadway in Hill County running between U.S. Highway 2 and the VanBuskirk property, across farmland now owned by the Gehlen Patricia Dow Trust (Gehlens).  After acquiring their property in 1976, the VanBuskirks' predecessors in interest[1] asserted an ultimately unsuccessful prescriptive easement claim against the

---

[1] Warren and Edith VanBuskirk were the VanBuskirks' predecessors in interest and the parents of plaintiff Mary VanBuskirk.

Gehlens' predecessors in interest[2] regarding the historical path of the disputed roadway.[3]

They tried again in 1982, this time resulting in a stipulated settlement in 1987 that included,

*inter alia*, the following express written grant from Gehlens' predecessors to VanBuskirks'

predecessors:

> the right to use the path across that real property more particularly described
> on Exhibit "C" appended hereto . . ., at all times which do not interfere with
> the farming operation on that real property, or whenever necessary.

(Emphasis in original.)  The referenced Exhibit C described the existing unimproved

roadway path from U.S. Highway 2 southerly to the northwest corner of the surveyed

VanBuskirk property by two complementary means—a metes and bounds description and:

> [a] portion of a United States Department of the Interior Geological Survey
> [map] . . . shown below and by this reference made a part hereof, *which
> depicts the above-described way*.

(Emphasis added.)[4]  The referenced portion of the United States Department of the Interior

Geological Survey map included in Exhibit C (USDIGS Map) depicted the historical

course of the unimproved roadway as then-existing and known to the parties on the ground.

---

[2] The Gehlens' predecessors in interest were Roy and Virginia Bruner and *Dow Brothers, Inc.*

[3] In 2014, the VanBuskirks' successors asserted by affidavit that the claim failed because Gehlens' predecessors plowed over the road in the summer of 1980, thereby precluding proof of the requisite prescriptive period.  *See VanBuskirk v. Gehlen* (*VanBuskirk I*), 2017 MT 119N, ¶ 5, 388 Mont. 555, 403 P.3d 1244 (noting failure of the 1980 claim due to lack of proof of the required five years of adverse use).  Pursuant to our internal operating rules, *VanBuskirk I* is an unpublished opinion with no effect other than as a prior judgment establishing the law of the case between the parties.

[4] Distinct from the Northern Loop Road described and depicted in Exhibit C, the 1987 stipulation also included two other express grants of easement across the Gehlens' property—a roadway easement over a segment of the Western Loop Road and a separate utility easement.

As then-existing and shown on the USDIGS Map, the historical course of the Northern Loop Road ran almost due south from the U.S. Highway 2 highway right of way approach until curving westerly and then back easterly (backward S-curve) to the northwest corner of the VanBuskirk property.[5]  After and in accordance with the 1987 Stipulation, the VanBuskirk property owners continuously used the Northern Loop Road, as depicted on the USDIGS Map included in Exhibit C, without interruption or dispute from 1987 until 2013-14.

¶3    In late 2013 or early 2014, Gehlens broke the longstanding peace by installing a locked gate across the Northern Loop Road at the boundary between the highway approach and the northern boundary of their property.[6]  In 2014, VanBuskirks filed suit against Gehlens asserting two alternative claims for declaratory judgment and related injunctive relief.[7]  The first was a prescriptive easement claim predicated on asserted continuous adverse use since 1980.  The second was an express easement claim predicated on the 1987 Stipulation, as described and depicted in Exhibit C thereto.  In January 2016, the District

---

[5] In 2008, as indicated in the April 2018 hearing record and the map in *VanBuskirk I*, ¶ 3, the VanBuskirks purchased an adjoining 20-acre tract west of the 1976 tract owned by their predecessors in 1987, thereby acquiring the adjoining third-party tract in which the Northern Loop Road continued southwest to its transition into the Western Loop Road, which in turn provides access west across another tract of Gehlens' property, *inter alia*, to County Road 440.

[6] The record indicates that the Gehlens, or their lessee, installed the locked gate, plowed-over the roadway, and seeded their surrounding field.  The roadway remained closed until re-established on its historical course by the VanBuskirks under a preliminary injunction issued prior to the 2016 declaratory judgment.

[7] The 2014 VanBuskirks' complaint also asserted separate claims for compensatory damages.

4

Court granted summary judgment to VanBuskirks on both alternative claims, and thus permanently enjoined Gehlens "from interfering with VanBuskirks' or their successors right to use the easement in the manner provided" in the 1987 Stipulation. *VanBuskirk I*, ¶¶ 7 and 11. The court awarded VanBuskirks costs and supplemental relief attorney fees on the declaratory judgment.[8] On May 16, 2017, we affirmed on the express easement claim, holding that the 1987 stipulation expressly granted VanBuskirks an appurtenant easement as described and depicted in Exhibit C, beginning at the northwest corner of their property and "terminat[ing] at [U.S.] Highway [2]." *VanBuskirk I*, ¶¶ 10-11. We accordingly declined to address the alternative prescriptive easement theory as "unnecessary." *VanBuskirk I*, ¶ 11. On a right-result, wrong-reason basis, we affirmed the attorney fees award as relief supplemental to the declaratory judgment authorized under § 27-8-313, MCA. *VanBuskirk I*, ¶ 13.[9]

¶4 Notably, and of later consequence here, not at issue in *VanBuskirk I* was the question of whether the historical course of the Northern Loop Road as depicted on the USDIGS map in the 1987 grant, and then existing on the ground, was consistent with the

---

[8] The court awarded attorney fees pursuant to § 27-1-316(1)(c), MCA ("detriment caused by the breach of covenant of seisin . . . or quiet enjoyment in a [real property] grant" includes "expenses . . . incurred . . . in defending possession"), and § 27-8-311, MCA (Montana Uniform Declaratory Judgment Act (MUDJA) discretionary "costs" awards). *VanBuskirk I*, ¶ 13.

[9] On November 17, 2017, VanBuskirks moved for similar supplemental recovery of the additional attorney fees incurred in preparing the final judgment of the court prior to Gehlens' appeal, successfully defending the judgment on appeal in *VanBuskirk I*, and successfully opposing Gehlens' subsequent motion for rehearing on appeal. Due to intervening issues that arose immediately on remand, the District Court did not address the motion for additional attorney fees related to *VanBuskirk I* until it addressed the other post-remand issues in May 2018.

accompanying metes and bounds description. The 2016 judgment merely concluded pursuant to M. R. Civ. P. 56 that it was beyond genuine material dispute that "[t]he route and location of the path at issue was specifically described in Exhibit C of the [1987] Stipulation . . . [and] remained unchang[ed] and fixed for far more than 25 years."

¶5 Before the ink was dry on *VanBuskirk I*, Gehlens, through their lessee, took two actions that altered the status quo of the Northern Loop Road. First, incident to seeding the surrounding field in May or June of 2017, they again plowed-over the historical course of the road. In its stead, they left an unseeded, un-bladed 20'-wide path that ran directly due south on a straight line from the highway approach adjoining their north boundary, across Gehlens' field to the approximate apex of the south half of the preexisting backward-S curve, and then south through the remnant of the curve to the north boundary of the VanBuskirk property tract acquired in 2008. The un-bladed path overlayed the historic course of the road in certain segments, but substantially deviated from it insofar that the new path essentially eliminated the north half of the original backward S-curve that continued south to the north boundary of the expanded VanBuskirk property. In conjunction with the new un-bladed path, Gehlens placed new stock fencing and an unlocked 12' metal gate across the roadway at or near the VanBuskirks' property line. On November 20, 2017, on the asserted grounds that the new path deviated from the historical course of the previously adjudicated easement and the new fencing and gate precluded them from getting larger equipment (*i.e.* mowing equipment) onto their property, VanBuskirks filed a motion for enforcement of the 2016 judgment, and included

6

injunction, seeking: (1) a contempt-finding against Gehlens; (2) an order compelling them to remove the new fencing and gate and to "restore the road bed to its original condition and location"; and (3) a related attorney fees award.

¶6 Upon evidentiary hearing in May of 2018, the District Court concluded that, due to the fact that the metes and bounds description accompanying the USDIGS Map in the 1987 grant had never been surveyed to establish the precise location of the described easement on the ground, VanBuskirks failed to meet their burden of showing that the Gehlens were in contempt of the 2016 judgment. The court further reasoned, *inter alia*, that the unlocked easy-open stock gate was a reasonable use of the servient tenement to control grazing stock and would not substantially impair VanBuskirks' ability to bring large equipment onto their property because: (1) it "is wide enough for the usual traffic"; (2) there was no evidence that the 12' gate had actually interfered with VanBuskirks' use of the easement to date; and (3) the subject road "is not the only access to [their] property."

¶7 As to the alleged deviation of the 2017 Gehlens path from the historical course of the roadway, the District Court found that a pre-2017 *Google Maps* satellite photo showed the pre-2017 course of the road as "approximately identical" to the original course of road depicted on the USDIGS Map included in Exhibit C to the 1987 Stipulation. The court acknowledged that the new 2017 Gehlens path did not "precisely follow" the historical course of the road, but reasoned that the metes and bounds description in the 1987 grant remained un-surveyed, "no one required VanBuskirk[s] to follow the [new] path," and nothing prevented them from still driving "where the easement was supposed to go." The

7

court concluded that "[o]nly by having the exact location of the survey marked can VanBuskirk's rights be protected." Accordingly, *sua sponte*, the court ordered VanBuskirks "[to] obtain . . . a licensed surveyor to mark the exact location of the [previously adjudicated] easement based on the description in [the 1987 stipulation]."

¶8     VanBuskirks subsequently commissioned a professional survey of the metes and bounds description in Exhibit C to the 1987 grant. However, the 2018 survey yielded a surprising result—the plotted metes and bounds description significantly deviated from the historical course of the roadway as depicted on the accompanying USDIGS Map and as had existed on the ground since before 1987. From the north boundary line of the expanded VanBuskirks' property,[10] the surveyed metes and bounds description road plotted north in a substantially similar, if not identical, course through the north half of the backward-S curve depicted on the accompanying USDIGS Map in the 1987 Exhibit and the corresponding pre-2017 satellite photo. From there, however, the remaining segment of the surveyed metes and bounds course does not proceed due north in a straight line to the existing highway approach at the north border of the Gehlens' property. Rather, it angles off northwest to a point on the north boundary of the Gehlens' property and adjoining highway right of way, more than 200-feet to the west of the existing highway approach.[11]

---

[10] In the south, the 1987 metes and bound description actually started from the northwest corner of the 1976 VanBuskirk tract and did not cross-over the south boundary line of the Gehlens' property until after traversing a short distance to the west to a point inside the adjoining third-party property that VanBuskirks acquired in 2008.

[11] As subsequently noted by the District Court, this deviation is significant because the Montana Highway Department controls and limits the number and location of highway approaches, *i.e.* access points, to U.S. Highway 2.

8

Strangely, the VanBuskirks-commissioned survey did not attempt to correlate the surveyed metes and bounds course with the course depicted in the accompanying USDIGS Map which the District Court had earlier found as "approximately identical" to the course shown in the pre-2017 satellite photo, and which VanBuskirks had previously asserted as the course of their granted easement. The survey instead included a plot of the surveyed 1987 metes and bounds course compared to the plotted course of the new 2017 Gehlens path to which VanBuskirks had previously objected in their contempt motion.

¶9 In December 2018, VanBuskirks filed a copy of the 2018 survey under a document captioned "Notice of Surveyor Location of Existing Easement." Faced with the ambiguity between the historical course of the road depicted on the USDIGS Map and the accompanying metes and bounds description in the 1987 grant, the Notice included a motion to the effect that the 2016 judgment "should be amended nunc pro tunc[] to match the depiction of the [2017 Gehlens path] depicted" in the 2018 survey. Recognizing, however, that the new 2017 Gehlens path significantly differed from the historical course of the road on the ground and as depicted in the USDIGS Map, Gehlens' *pro se* response pointed out that VanBuskirks' motion erroneously referenced the new 2017 Gehlens path:

> as the [easement granted in 1987]. We . . . granted [them] permission to use [the new] path in our December 6, 2017 email . . . [Their] easement, as [o]rdered by the Court, is the one . . . [plotted in the 2018 survey] . . . and . . . identified by . . . Exhibit C of the 1987 Stipulation **which has always been fully embraced by the** [**Gehlens**].
>
> Instead of only conducting a [s]urvey of the easement as described in Exhibit C of the 1987 Stipulation, as ordered by the Court, [VanBuskirks] are trying

to mislead the Court into granting them a more favorable easement than that set forth in the 1987 Stipulation, which the Court has already acknowledged. Now, [they] are trying to represent that [2017 Gehlens] path across the field to be their easement instead of the easement described in said 1987 Stipulation. According to the [2018] Survey . . . [their] easement is 242 feet west of the permissive path granted to [them in 1987] . . . [as] acknowledged by the Surveyor's disclaimer.

(Emphasis in original.) Upon recounting the tangled procedural history of the case, the District Court denied VanBuskirks' motion for clarification in May 2019 based on the following summary rationale:

Somehow the [VanBuskirks] have now decided they no longer like the location of the exact easement they fought so hard to enforce, and [now] want the Court to move (reform) the Northern Loop Road. . . . [However, they] have gotten what they asked for, enforcement of the easement for their . . . [r]oad and they are clearly entitled to use the easement exactly where [the metes and bounds description] is staked-out by the surveyor.

The court later rescinded the ruling, however, after VanBuskirks pointed out that Gehlens did not serve their *pro se* response on VanBuskirks, thereby by denying them the right to reply to Gehlens' response in opposition to the motion for clarification.

¶10 In their subsequent reply, VanBuskirks pointed out and asserted that: (1) the 2016 judgment adjudicated their express easement to be the pre-2017 course of the Northern Loop Road as depicted in the USDIGS Map included in the 1987 grant;[12] (2) they previously advised Gehlens and the court that "they [offered to] accept the [new] path as a modification" of the historical course of the 1987 easement conditioned on a stipulated

---

[12] The reply further noted that the 2016 judgment also favorably adjudicated VanBuskirks' alternative claim that they had independently acquired a prescriptive easement over the historical course of the road in any event.

adjudication of the new path as an appurtenant easement rather than a revocable permissive right as asserted by Gehlens; (3) the historical course of the roadway was fixed, accepted, and well-known to all from 1987 until discovery of the ambiguity in 2018; (4) equitable claim preclusion and subsequent judicial admissions on remand from *VanBuskirk I* precluded Gehlens from disputing the location of the 1987 easement in 2018; (5) the ambiguity in the 1987 grant clearly resulted from a mutual mistake that should be resolved in accordance with the manifest intent of contracting parties; and (6) VanBuskirks' previously adjudicated prescriptive use of the roadway prior to 2013-14 in any event rendered immaterial the subsequently discovered ambiguity in the 1987 grant. Following a multitude of irregular sur-replies and responses resulting from Gehlens' unregulated *pro se* practice, the District Court issued a written judgment in February 2020 denying VanBuskirks' motion for clarification. Without analysis reconciling the facial ambiguity in the 1987 grant between the metes and bounds description and accompanying USDIGS Map depiction, the court cursorily concluded that the metes and bounds description, not surveyed until 25 years later, exclusively defined the course and scope of the express easement. Based on the unlikelihood of obtaining state authorization for new or relocated access to U.S. Highway 2, the court characterized the 1987 easement and related 2016 judgment as "useless." The court observed that "[h]ad [VanBuskirks] been more diligent" they "would have . . . concentrated on establishing a [p]rescriptive [e]asement" over the historical course of the roadway which then would have been enforceable regardless of the subsequently discovered ambiguity in the 1987 grant.

11

¶11 Based on the "useless" nature of the 1987 easement and ensuing 2016 judgment, the District Court further concluded that the prior supplemental attorney fees award on the 2016 judgment was in retrospect "unjust and inequitable." After ordering supplemental briefing, the court ruled in June 2020 that the prior attorney fees and costs awards on the 2016 judgment affirmed in *VanBuskirk I* were "based on erroneous facts," rendering it "necessary and proper to effectuate justice based upon now-corrected facts." Accordingly, "in reformation" of the 2016 judgment, the court ordered VanBuskirks to repay the prior awards of attorney fees and costs.[13] VanBuskirks timely appeal.

## STANDARD OF REVIEW

¶12 We review lower court findings of fact only for clear error. *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, 53 P.3d 870. Findings of fact are clearly erroneous only if not supported by substantial evidence or our review of the record manifests that the court misapprehended the evidence or was otherwise clearly mistaken. *Larson v. State*, 2019 MT 28, ¶ 16, 394 Mont. 167, 434 P.3d 241; *Interstate Prod. Credit Ass'n of Great Falls v. DeSaye*, 250 Mont. 320, 323, 820 P.2d 1285, 1287 (1991). We review lower court conclusions and applications of law de novo for correctness. *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894; *Steer, Inc. v. Mont. Dep't of Revenue*, 245 Mont. 470, 475, 803 P.2d 601, 603 (1990).

---

[13] In their November 2017 motion for additional attorney fees incurred on appeal in *VanBuskirk I*, VanBuskirks acknowledged that Gehlens previously paid them $50,497.07 in attorney fees, costs, and accrued interest in accordance with the original awards on the 2016 judgment.

¶13   The interpretation or construction of a prior judgment is a question of law reviewed de novo for correctness. *Meine v. Hren Ranches, Inc.* (*Meine II*), 2020 MT 284, ¶ 12, 402 Mont. 92, 475 P.3d 748 (citing *In re Water Rights of Quigley*, 2017 MT 278, ¶ 15, 389 Mont. 283, 405 P.3d 627). We review the question of whether an attorney fees award is necessary and proper supplemental relief under § 27-8-313, MCA, for an abuse of discretion. *Billings High Sch. Dist. No. 2 v. Billings Gazette*, 2006 MT 329, ¶¶ 23-38, 335 Mont. 94, 149 P.3d 565. An abuse of discretion occurs if a court exercises discretion based on a clearly erroneous finding of material fact, an erroneous conclusion or application of law, or otherwise acts arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice. *In re Marriage of Bessette*, ¶ 13; *Larson*, ¶ 16; *In re D.E.*, 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586; *City of Missoula v. Mountain Water Co.*, 2018 MT 139, ¶ 9, 391 Mont. 422, 419 P.3d 685.

**DISCUSSION**

¶14   Based on *VanBuskirk I*, the resulting law of the case, and the doctrine of res judicata, VanBuskirks assert that the District Court erroneously: (1) *sua sponte* ordered them to survey the 1987 grant of easement; (2) denied their ensuing motion to clarify the subsequently discovered ambiguity in accordance with *VanBuskirk I* and the underlying judgment; and (3) *sua sponte* rescinded their prior awards of supplemental attorney fees and costs. They further assert that, on remand from *VanBuskirk I*, the court also erroneously denied their motion for additional attorney fees incurred in successfully defending the 2016 judgment on appeal. Gehlens counter that the court correctly

13

recognized that the judgment and *VanBuskirk I* were based on materially erroneous facts, and thus correctly denied the motion for clarification and rescinded the prior awards of attorney fees and costs on the erroneous judgment.

¶15 The law of the case is an equitable doctrine which provides that when this Court rules on a case and states a principle or rule of law necessary to the decision, our judgment "becomes the law of the case and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal." *Winslow v. Mont. Rail Link, Inc.*, 2005 MT 217, ¶ 30, 328 Mont. 260, 121 P.3d 506. *Accord Carlson v. N. Pac. Ry. Co.*, 86 Mont. 78, 81-82, 281 P. 913, 914 (1929).[14] The doctrine encompasses all principles or rules of law previously at issue including, *inter alia*, evidentiary questions and the sufficiency of the evidence supporting the pertinent verdict or judgment. *Carlson*, 86 Mont. at 82, 281 P. at 914. It applies "to all points which were directly involved in, and were passed upon," in the prior decision on appeal and is generally binding on the lower court and here in all subsequent proceedings in the same case, regardless of whether later viewed as "right or wrong." *Anderson v. Border*, 87 Mont. 4, 8, 285 P. 174, 176 (1930).[15] The doctrine reflects

---

[14] *See also Diaz v. State*, 2013 MT 219, ¶ 32, 371 Mont. 214, 308 P.3d 38 (noting similar operation of law of the case and res judicata doctrines); *State v. Azure*, 2008 MT 211, ¶ 28, 344 Mont. 188, 186 P.3d 1269 (noting equitable basis of law of the case doctrine—internal citation omitted).

[15] *But see Fiscus v. Beartooth Elec. Coop., Inc.*, 180 Mont. 434, 436-37, 591 P.2d 196, 197 (1979) (noting that "the doctrine is inapplicable" where the prior decision was manifestly "unsound, . . . incorrect," or based on a manifest "mistake of fact . . . made on [the] first appeal"); *Carlson*, 86 Mont. at 82, 281 P. at 914 (noting an unspecified category of "recognized exceptions"); 5 C.J.S. Appeal and Error § 868 (doctrine does not apply "where a previous ruling was clearly in error or . . . there was . . . [a material] change in circumstances with respect to the factual basis for issues previously decided, or [] there is sufficient equitable concern of preventing injustice to overcome the doctrine").

that appellate court judgments conclusively "settle the law" and "establish" the pertinent facts previously at issue in the case. *Cent. Mont. Stockyards v. Fraser*, 133 Mont. 168, 187, 320 P.2d 981, 991-92 (1957). By definition, it necessarily applies to all issues previously decided by the lower court as affirmed on appeal and those the aggrieved party had the opportunity to appeal but did not. *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352. It thus also applies to all factual and legal issues implicitly or necessarily considered and decided in reaching our prior decision, but *not* to claims or related issues that could have been previously raised on appeal but were not. *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 106-07 (Fla. 2001).

¶16 Res judicata, also known as claim preclusion, is a related but distinct equitable doctrine that furthers the policy that litigation must eventually reach a definite end, and thus precludes a party "from incessantly waging piecemeal, collateral attacks against [prior] judgments." *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 18, 366 Mont. 78, 285 P.3d 494 (quoting *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267, and noting similar purposes of res judicata and collateral estoppel). In contrast to the law of the case, res judicata more broadly bars the relitigation of claims and constituent issues in a second or subsequent action that were either litigated, or could have been, between the parties in a prior action. *Brilz*, ¶ 21. Res judicata applies when: (1) the parties or their privies were the same in both actions; (2) both actions involved the same subject matter; (3) the issues in the latter action are the same in relation to the subject matter as those raised, or that could have been raised, between the parties in the prior action; (4) "the

15

capacities of the parties are the same in reference to the subject matter and the issues between them"; and (5) the prior action resulted in a final judgment on the merits by a court of competent jurisdiction. *Brilz*, ¶ 22 (citations omitted). By definition, res judicata does not apply to subsequent attempts to litigate previously litigated or related claims in the same action—only to attempts to relitigate the same or related claims in a subsequent action. *Watchtower Bible & Tract Soc'y of N. Y., Inc. v. Mont. Twentieth Jud. Dist. Ct.*, 2021 MT 13, ¶ 11, 403 Mont. 57, 479 P.3d 946 ("[c]laim preclusion simply does not apply to the continued proceedings" before the same court); *PennyMac Corp. v. Godinez*, 474 P.3d 264, 268 (Haw. 2020) (res judicata applicable only to new suits, not continuation of the same suit—citing 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4404 (3d ed. 2020)); *Lodis v. Corbis Holdings, Inc.*, 366 P.3d 1246, 1259 (Wash. Ct. App. 2015) (essential difference is that law of the case "applies to successive proceedings in the same case," where res judicata applies to "successive proceedings in different cases"); *Juliano*, 801 So. 2d at 105-07 (res judicata not applicable to "successive appeals . . . in the same case"). With these principles in mind, we turn to VanBuskirks' pertinent assertions of error.

¶17    *1. Whether the District Court erred by sua sponte ordering VanBuskirks to survey the 1987 grant, subsequently denying their resulting motion for clarification, and rescinding their prior awards of attorney fees and costs?*

¶18    As a threshold matter, the District Court's 2018 *sua sponte* order for survey of the 1987 easement, and VanBuskirks' resulting motion for clarification of the subsequently discovered ambiguity, directly resulted from or, in other words, were triggered by their

16

2017 motion for enforcement of the 2016 judgment on remand from *VanBuskirk I*. Consequently, on the asserted basis of the 2016 judgment, the law of the case, rather than res judicata, is the applicable preclusive equitable doctrine on its elements because the disputed proceedings at issue subsequently arose in the same case.

A. Law of the Case in re 2018 Order for Easement Survey.

¶19 In pertinent part, pursuant to M. R. Civ. P. 56, the 2016 judgment concluded as a matter of law that it was beyond genuine material dispute that: (1) VanBuskirks and their predecessors "used the [subject] path continuously, without interruption, since 1983"; (2) the "route and location of the path . . . was specifically described in Exhibit C" of the 1987 Stipulation; and (3) the "route and location of the path" remained fixed without challenge for over 25 years prior to Gehlens' interference with VanBuskirks' use in 2013-14. The judgment decreed that the 1987 Stipulation was a valid and enforceable contract that "created a right of way to cross the field on the path which transverses" Gehlens' property. In affirming the judgment, we held, *inter alia*, that the 1987 Stipulation expressly granted an appurtenant easement as described and depicted in Exhibit C, beginning at the northwest corner of the then-existing VanBuskirk property, "run[ning] directly through Gehlens' property," and terminating at U.S. Highway 2. *VanBuskirk I*, ¶¶ 10-11. Thus, the pertinent law of the case established in *VanBuskirk I* was that the 1987 Stipulation granted an express roadway easement appurtenant to the original VanBuskirk property running across the property now owned by Gehlens, along the historical course of the roadway to the existing highway approach, as depicted on the USDIGS Map included

17

in Exhibit C and as presumably described consistently in the accompanying metes and bounds description. VanBuskirks correctly assert that the law of the case precluded any further litigation, whether instituted by Gehlens or *sua sponte* by the court, disputing or deviating from the pre-2013 historical course of the Northern Loop Road as the location and path of the express roadway easement granted in the 1987 stipulation.[16]

¶20     However, a court may nonetheless subsequently interpret or clarify a prior judgment to resolve any ambiguity, imprecision, or uncertainty in original meaning or effect as necessary to subsequently implement, enforce, or otherwise fully effect the judgment. *Meine II*, ¶¶ 17-21 (citing *Smith v. Foss*, 177 Mont. 443, 446-47, 582 P.2d 329, 331-32 (1978)). A subsequent interpretation or clarification may not expand or modify previously adjudicated rights or adjudicate new rights, but "may more precisely explain or specify the original meaning or effect of the judgment or provide additional specification necessary to implement it." *Meine II*, ¶ 19 (internal citations omitted). Such limited interpretation or clarification does not materially amend, modify, or deviate from the original scope and effect of the judgment, and therefore neither effects a substantive alteration or amendment, nor deviates from the previously established law of the case. *See Meine II*, ¶ 18-19 (holding

---

[16] VanBuskirks alternatively assert in passing that the 1987 stipulated judgment in the prior action between the parties' predecessors in interest independently rendered res judicata any subsequent dispute in 2018 between their successors regarding the existence or location of the 1987 easement. Because they prevail on their primary law of the case theory, we need not address their alternative res judicata theory.

that mere interpretation or clarification of a prior judgment is not a substantive alteration or amendment subject to M. R. Civ. P. 59-60).

¶21    Here, the precise location of the historical course of the Northern Loop Road arose as a consideration material to the disputed matters subsequently at issue between the parties under VanBuskirks' 2018 motion for enforcement of the 2016 judgment.  In that regard, the District Court ultimately concluded that VanBuskirks failed to meet their burden of proving that Gehlens were in contempt of the prior permanent injunction due in part to the fact that the location of the easement as generally depicted in Exhibit C to the 1987 grant had never been precisely located by survey in accordance with its accompanying metes and bounds description.  Reasoning that "[o]nly by having the exact location of the survey marked can Vanbuskirk's rights be protected," the court ordered them to professionally survey the 1987 metes and bounds description for that purpose.  Neither party objected to the *sua sponte* order until after the survey subsequently revealed the surprising ambiguity in the 1987 Stipulation that then led to further dispute.  The court ordered the metes and bounds description surveyed for purposes of further clarification and enforcement of the 2016 judgment in the face of the new post-judgment dispute between the parties.  In accordance with *Meine II*, we hold that the District Court did not erroneously order a survey to clarify the precise location of the easement in relation to the ongoing dispute of the parties on remand from *VanBuskirk I*.

   B.  Motion for Clarification of Subsequently Revealed Ambiguity.

¶22 When the 2018 survey did not provide the contemplated clarity, and instead provided even more fodder for dispute, the exasperated District Court declared the 1987 easement and resulting 2016 judgment "useless," thereby effectively consigning both to the proverbial dust bin. However, the law of the case required more. The 2018 survey merely revealed a previously unknown ambiguity between the metes and bounds description and accompanying depiction of the easement in the 1987 grant, which in turn revealed a similar ambiguity in the 2016 judgment. VanBuskirks' subsequent motion for clarification was therefore a cognizable motion for clarification of the judgment for the purposes of fully effecting and enforcing the original meaning and effect of the prior judgment. *See Meine II*, ¶¶ 17-21.

¶23 "As applicable . . ., the interpretation or construction of a prior judgment is generally subject to the same rules for the interpretation and construction of other written instruments." *Meine II*, ¶ 21 (internal citations omitted). Accordingly, to the extent possible, courts must first attempt to construe the meaning and effect of a prior judgment in accordance with its clear and unambiguous operative language, without resort to supporting findings of fact, conclusions of law, the underlying evidentiary record or pleadings, or other extrinsic matters. *Meine II*, ¶ 21 (internal citations omitted). The court must read the express language of the judgment as a whole, with effect to all "including such effects and consequences as follow by necessary legal implication." *Meine II*, ¶ 21 (internal citations omitted). However, "if the operative language of a judgment is ambiguous, unclear, or imprecise" in relation to a subsequent dispute between the parties,

20

"the court may then construe it in accordance with its supporting conclusions of law, findings of fact, and underlying evidentiary record and related pleadings." *Meine II*, ¶ 22 (internal citations omitted). "To the extent possible, the court must [then] reasonably construe the ambiguity, uncertainty, or imprecision in harmony with the underlying evidentiary record and applicable law." *Meine II*, ¶ 22 (internal citations omitted).

¶24 The construction or interpretation of an underlying contract is likewise a question of law. *Performance Mach. Co. v. Yellowstone Mountain Club, LLC*, 2007 MT 250, ¶ 21, 339 Mont. 259, 169 P.3d 394. In construing written contracts, courts must give effect to the mutual intent of the parties at the time of formation based first on the express language of the agreement. *Performance Mach. Co.*, ¶ 21 (citing § 28-3-303, MCA). Here, it is manifest on the face of the 1987 Stipulation, and included Exhibit C, that the parties to the agreement presumed that the specified metes and bounds description in Exhibit C precisely described the course of the subject easement in substantial accordance with the historical course of the roadway as generally depicted on the accompanying USDIGS Map. In accordance with the consistent, clear, and unambiguous language of the 2016 judgment, the 1987 Stipulation granted an express easement across the servient tenement as generally depicted in Exhibit C and *consistently* more particularly described in the accompanying metes and bounds description. In accordance with the underlying conclusions of law on the Rule 56 factual record in 2016 judgment, as affirmed in *VanBuskirk I*, ¶¶ 10-11, the intended course of the roadway easement depicted in Exhibit C to the 1987 grant directly correlated with the historical course of the roadway path that existed on the ground in 1987.

21

The judgment further concluded that it was beyond genuine material dispute that the roadway course generally depicted in Exhibit C and then existing on the ground in 1987 thereafter remained in continuous use without substantial deviation until Gehlens first interfered in 2013-14. In accordance with manifest intent of the parties on the face of the 1987 grant, the express language of the 2016 judgment, the resulting law of the case established in *VanBuskirk I*, and regardless of the subsequently discovered ambiguity between the map depiction and metes and bounds description in the grant, the 1987 Stipulation granted an express appurtenant roadway easement across the property now owned by Gehlens, from the northwest corner of the then-existing VanBuskirk property, north to the existing U.S. Highway 2 approach along the historical course of the roadway path as generally depicted in Exhibit C to the 1987 Stipulation.[17] Neither the District Court, nor Gehlens, have provided any analysis or rationale demonstrating that law or equity warrants any relief here other than resolution of the facial ambiguity in the 1987 grant in accordance with the manifest intent of the parties, and resulting clarification of the 2016 judgment in accordance with the law of the case established in *VanBuskirk I*. We hold that the District Court erroneously failed to accordingly construe the 1987 Stipulation, 2016 judgment, and resulting law of the case established in *VanBuskirk I*, and thus erroneously

---

[17] On the 2018 evidentiary hearing record on VanBuskirks' motion for contempt, the District Court found that a pre-2017 satellite photo showed the pre-2017 course of the road as "approximately identical" to the original course of road depicted on the USDIGS Map included in Exhibit C to the 1987 Stipulation.

22

failed to clarify the 2016 judgment and subject easement to that effect on the 2018 VanBuskirks' motion for clarification.

C. 2020 Rescission of 2016 Attorney Fees Award.

¶25 As noted in its 2020 judgments, the District Court rescinded its prior awards of supplemental relief attorney fees and costs to VanBuskirks based on its erroneous rationale for denying their 2018 motion for clarification in disregard of the law of the case. The 2020 rescission of the prior attorney fees and costs awards on the 2016 judgment thus similarly contravened the law of the case established in *VanBuskirk I*. We hold that the District Court erroneously rescinded the prior awards of supplemental relief attorney fees and costs to VanBurkirks on the 2016 judgment.

¶26 *2. Whether the District Court erroneously denied VanBuskirks' motion on remand for additional attorney fees incurred on appeal in VanBuskirk I?*

¶27 On remand from *VanBuskirk I*, the District Court denied VanBuskirks' motion for recovery of the additional attorney fees incurred in successfully defending the 2016 judgment on appeal.[18] Without analysis or citation to authority, the court reasoned that § 27-8-313, MCA, does not apply to attorney fees incurred on appeal. We disagree.

---

[18] The motion also sought additional fees incurred "in preparing the final judgment and requests for . . . [attorney] fees" prior to entry of final judgment. However, VanBuskirks previously had the opportunity to seek additional attorney fees related to the entry of judgment prior to appeal, and we generally do not allow recovery of attorney fees incurred in recovering discretionary attorney fees. *DeVoe v. City of Missoula*, 2012 MT 72, ¶¶ 27-29, 364 Mont. 375, 274 P.3d 752. Accordingly, we will address VanBuskirks' assertion of error only in regard to the additional attorney fees incurred in successfully defending the judgment on appeal in *VanBuskirk I* and on Gehlens' subsequent motion for rehearing.

¶28 Incident to granting declaratory judgment, courts have discretion under § 27-8-313, MCA, to grant further supplemental relief, including monetary or coercive relief, when "necessary or proper" to afford complete relief under the circumstances. *Trustees of Indiana Univ. v. Buxbaum*, 2003 MT 97, ¶¶ 41-42, 315 Mont. 210, 69 P.3d 663. *Inter alia*, this statutory authorization includes discretion to award the costs of attorney fees incurred in successfully prosecuting a declaratory judgment claim when "necessary or proper" to afford complete relief, such as when necessary or proper to prevent the claimant from being "worse off than if a declaration of . . . rights had never been made" or where the declaratory judgment was necessary to preserve or reverse the "status quo" in vindication of the claimant's property rights. *Buxbaum*, ¶¶ 42-46 (internal citations omitted). A successful defense of the judgment on appeal is the final step necessary to accomplish that end by declaratory judgment. Accordingly, when an attorney fees award on a declaratory judgment is deemed necessary and proper to afford complete relief under the circumstances of a particular case, a supplemental award of attorney fees incurred in successfully defending the judgment on appeal may, in the discretion of the court, be similarly necessary and proper absent some particular equitable consideration to the contrary. *See Park Cty. Concerned Citizens v. DePuy*, 2008 MT 246, ¶ 32, 344 Mont. 504, 190 P.3d 293.

¶29 Here, as determined by the District Court and affirmed on appeal in *VanBuskirk I*, the 2016 judgment was necessary under the circumstances to vindicate VanBuskirks' roadway easement rights and restore the status quo that had continuously existed thereunder without dispute since 1987. In subsequently denying their motion for the

24

additional attorney fees incurred in successfully defending the judgment on appeal, the court found no particular equitable consideration rendering such supplemental award any less necessary and proper than the supplemental attorney fees award previously adjudicated and affirmed as necessary and proper on the underlying judgment. The court denied the motion based solely on its conclusion of law that § 27-8-313, MCA, and *Buxbaum*, categorically do not apply to additional attorney fees incurred on appeal. However, under the particular circumstances of this case, the successful defense of the 2016 declaratory judgment on appeal was just as crucial to vindicating VanBuskirks' property rights, and restoring the longstanding status quo thereunder, as obtaining the judgment in the first place. We hold that the District Court abused its discretion in denying VanBuskirks' motion for a supplemental award of the additional attorney fees incurred in successfully defending the judgment on appeal in *VanBuskirk I*.

¶30 VanBuskirks further assert that they are similarly entitled to recover the additional attorney fees incurred in prevailing on this second appeal. However, they did not incur the additional attorney fees claimed here in either obtaining a declaratory judgment or defending one on appeal. They incurred the additional attorney fees on this second appeal in relation to their subsequent 2018 motion for enforcement of the subject declaratory judgment and their resulting motion for clarification. Under these circumstances, § 27-8-313, MCA, and *Buxbaum*, by definition do not similarly apply to their claim for additional attorney fees incurred on this second appeal.

25

**CONCLUSION**

¶31 We hold that the District Court did not erroneously *sua sponte* order VanBuskirks to professionally survey the metes and bounds description specified in Exhibit C to the 1987 easement grant to clarify the precise location of the easement in relation to the parties' post-judgment dispute. We hold that the court erroneously failed, however, to clarify the 2016 judgment and subject easement on the 2018 motion for clarification in accordance with the law of the case established in *VanBuskirk I*. We hold further that the District Court abused its discretion in denying VanBuskirks' motion for a supplemental award of the additional attorney fees incurred in successfully defending the 2016 judgment on appeal in *VanBuskirk I*. We accordingly affirm in part, reverse in part, and remand for determination and supplemental award to VanBuskirks of the additional attorney fees incurred in the successful defense of the judgment on appeal in *VanBuskirk I* and in response to Gehlens' subsequent motion for rehearing on appeal.

/S/ DIRK M. SANDEFUR

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE