FILED

08/05/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0502

DA 23-0502

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 169

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROGER MICHAEL KEECH,

      Defendant and Appellant

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC-2002-181
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy A. Hinderman, Appellate Defender Division Administrator,
          Jeff Wilson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz,
          Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

          Submitted on Briefs:  July 16, 2025

                  Decided:  August 5, 2025

Filed:

                                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Defendant and Appellant Roger Michael Keech (Keech) appeals from the July 12, 2023 Order Revoking Defendant's Sentence and Amended Judgment and Commitment issued by the First Judicial District Court, Lewis and Clark County. We reverse and remand to the District Court to amend the judgment to grant Keech an additional 2,220 days credit for time served in addition to the 62 days credit for time served from February 24, 2023, to April 7, 2023, and the 1,167 days credit for elapsed time originally ordered by the court in its July 12, 2023 order and judgment.

¶2     The issue on appeal is:

> *Whether the district court imposed an illegal disposition following Keech's second revocation proceeding by failing to award the proper amount of credit for time served.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In First Judicial District Court Cause No. CDC-02-181 (hereinafter the Lewis and Clark cause), Keech was sentenced on January 9, 2003, to the Montana Department of Corrections (DOC) for a term of 20 years with 16 years suspended. In 2007 and 2008, Keech committed new offenses, including a felony forgery in Yellowstone County. In addition to being charged in Yellowstone County with the forgery, in Cause No. DC-08-173 (hereinafter the Yellowstone County cause), the State petitioned to revoke the suspended sentence in his Lewis and Clark cause. In November 2008, pursuant to a plea agreement, Keech was sentenced in the Yellowstone County cause to 5 years DOC, concurrent to the Lewis and Clark cause.

2

¶4 Subsequently, on March 12, 2009, Keech's suspended sentence in the Lewis and Clark cause was revoked and the court imposed a 16-year commitment to the DOC with 11 years suspended. As the disposition sentence was silent as to whether it was concurrent or consecutive to any other sentence imposed, the DOC ran it consecutively to the Yellowstone County cause, presumably pursuant to § 46-18-401(4), MCA, which provides, "[s]eparate sentences for two or more offenses must run consecutively unless the court otherwise orders." On October 14, 2011, Keech filed a pro se petition for writ of habeas corpus asserting DOC improperly failed to merge his Yellowstone County cause when it was designated to be concurrent with the Lewis and Clark cause. The State asserted Keech's sentences should run consecutively pursuant to § 46-18-401(4), MCA. This Court did not address Keech's argument that upon issuance of the Yellowstone County sentence and the pronouncement that it was concurrent to the Lewis and Clark cause, it merged with the Lewis and Clark cause such that later revocation of it did not result in severing of the sentences. Instead, we determined Keech did not meet his burden to show the invalidity of the judgment or sentence he attacked. We reasoned that because the Lewis and Clark judgment "failed to specify that Keech's sentences should run concurrently, they must run consecutively. *See* § 46-18-401(4), MCA." *Keech v. Kirkegard*, No. OP 11-0622, 364 Mont. 550, 286 P.3d 248 (Feb. 7, 2012) (*Keech I*).

¶5 Following this Court's February 7, 2012 Order, Keech filed a motion to withdraw his guilty plea in the Yellowstone County cause, which the district court treated as a petition for postconviction relief (PCR). In that case, Keech argued he would never have entered a

3

guilty plea in the Yellowstone County cause if he had known the sentences in the Yellowstone County cause and the Lewis and Clark cause would run consecutively. The district court denied the petition as untimely. Keech appealed. This Court affirmed, noting that as the court in the Lewis and Clark cause failed to specify the sentences should run concurrently, they must run consecutively consistent with § 46-18-401(4), MCA, as noted in our prior order of February 7, 2012. *State v. Keech*, No. DA 12-0635, 2013 MT 111N, 2013 Mont. LEXIS 133 (*Keech II*).

¶6    The State again petitioned to revoke the suspended sentence in the Lewis and Clark cause in 2018 and 2019. While pending revocation, Keech again filed a pro se petition for a writ of habeas corpus asserting it was improper to run his Yellowstone County cause consecutively to the revocation of his Lewis and Clark cause. He asserted this to be improper as the Yellowstone County cause did not exist when he was originally sentenced in the Lewis and Clark cause and when his Lewis and Clark cause was later revoked, the Yellowstone County sentence was already pronounced to be concurrent to it and had merged with it. This Court again denied his habeas petition noting that the court in the Lewis and Clark cause imposed a lawful sentence and when it was silent as to how the sentence would run, pursuant to § 46-18-401(4), MCA, it must run consecutively to the Yellowstone County cause. *Keech v. Bragg*, No. OP 23-0220, 412 Mont. 551, 531 P.3d 542 (April 25, 2023) (*Keech III*).

¶7    At the April 27, 2023 sentencing hearing, the District Court revoked Keech's suspended sentence and sentenced him to an 11-year DOC commitment, with 6 years

suspended. The District Court granted 62 days of credit for time served and 1,167 days of elapsed time credit. The court's written Order Revoking Defendant's Sentence and Amended Judgment and Commitment followed on July 12, 2023.

¶8    Additional facts will be discussed as necessary below.

**STANDARD OF REVIEW**

¶9    We review the revocation of a suspended sentence for abuse of discretion. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. Additionally, revocation decisions involve both legal and factual findings, and we review a district court's legal findings de novo and its factual findings for clear error, thus findings of fact regarding a probationer's credit for elapsed time or time served are reviewed for clear error. *Jardee*, ¶¶ 5, 12. "[W]hen the district court's authority to take a specific action is at issue, the question is one of law and our review is de novo." *State v. Gudmundsen*, 2022 MT 178, ¶ 8, 410 Mont. 67, 517 P.3d 146; *State v. Tippets*, 2022 MT 81, ¶ 9, 408 Mont. 249, 509 P.3d 1. Calculating credit for elapsed street time and time served is not a discretionary act, but a legal mandate. *State v. Pennington*, 2022 MT 180, ¶ 18, 410 Mont. 104, 517 P.3d 894; *Gudmundsen*, ¶ 8. As such, a district court's determination of street time or time served credit is reviewed for legality and we exercise de novo review. *Tippets*, ¶ 10. Factual findings "are clearly erroneous if they are not supported by substantial credible evidence, the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite firm conviction that a mistake has been made." *Jardee*, ¶ 5 (quoting *State v. Johnson*, 2018 MT 277, ¶ 10, 393 Mont. 320, 430 P.3d 494). "[T]he interpretation

5

and construction of a statute is a matter of law, and we review whether the district court interpreted and applied a statute correctly de novo." *Jardee*, ¶ 5 (citation omitted).

## DISCUSSION

¶10　Keech continues to assert the revocation sentence in the Lewis and Clark cause should have properly run concurrent to the Yellowstone County cause and failure to do so is contrary to our holdings in *State v. Seals*, 2007 MT 71, 336 Mont. 416, 156 P.3d 15, *State v. Adams*, 2013 MT 189, 371 Mont. 28, 305 P.3d 808, and *State v. Wolfblack*, 2024 MT 166, 417 Mont. 376, 553 P.3d 9. He also asserts he has not been properly credited with credit for time served since his initial arrest in 2002. Keech asserts he is entitled to receive credit for 2,251 days of credit for time served in addition to the 1,167 days of elapsed street time credit the parties stipulated to and ordered by the District Court in the July 12, 2023 Order Revoking Defendant's Sentence and Amended Judgment and Commitment.

¶11　In response, the State argues that this Court already rejected Keech's same claim in both *Keech I* and *Keech III* and that under the doctrines of "the law of the case" and "res judicata" Keech may not raise issues this Court previously decided. Despite this argument, the State recognizes *Keech I* and *Keech III* conflict with our holdings in *Seals* and *Adams* and recognizes that pursuant to *State v. Southwick*, 2007 MT 257, ¶¶ 17-19, 339 Mont. 281, 169 P.3d 698, res judicata does not apply when a defendant is subjected to a facially illegal sentence. The State further concedes that, even if the revocation sentence in the Lewis and Clark cause and the Yellowstone County sentence run consecutive, as it advocates, Keech

6

is entitled to receive an additional 892 days of credit for time served for the Lewis and Clark sentence.

¶12    In *Seals*, Seals was sentenced on drug charges pursuant to a plea agreement.  He was sentenced to 5 years at the Montana State Prison (MSP) on count I and ten years suspended on counts II and III.  Counts II and III were ordered to run concurrent to each other but consecutive to count I.  After serving his sentence on count I and being discharged to his suspended sentences, Seals' suspended sentences on counts II and III were revoked and the court imposed a 5-year MSP sentence on count II and a 5-year suspended sentence on count III, consecutive to count II.  *Seals*, ¶¶ 3-5.  Seals appealed, asserting that pursuant to § 46-18-203(7), MCA, the court had no authority to impose a sentence greater than the sentence he originally received and the consecutive nature of the sentences on counts II and III increased the original concurrent nature of the sentences.  Although the State argued that pursuant to § 46-18-401, MCA, it was within the district court's discretion to run the sentences imposed upon revocation consecutively or concurrently, this Court concluded "§ 46-18-401, MCA, is not applicable to the revocation matter before us because sentencing upon the revocation of a suspended or deferred sentence is particularly and expressly governed by § 46-18-203, MCA[.]" *Seals*, ¶ 15.  We explained that given our statutory scheme, a sentencing court's authority to re-sentence depends on when the illegal sentence is discovered and challenged—if done while serving the sentence, it can be corrected through re-sentencing, but if done during a revocation proceeding while serving the suspended portion of the illegal sentence, upon sentencing in the revocation proceeding,

the court is constrained by the particulars of § 46-18-203(7), MCA. *Seals*, ¶ 15. Within this framework, this Court determined the original sentences imposed for counts II and III were illegal as outside the parameters of the 5-year maximum sentence permitted by § 45-9-102, MCA (1997) and § 46-18-401, MCA (1997),[1] was not applicable to the revocation as sentencing upon revocation of a suspended sentence was governed by § 46-18-203, MCA. We further explained that the district court could not elect to continue the suspended sentence under § 46-18-203(7)(a) or (b), MCA, as that sentence was illegal and its only option under (c) was to impose a lesser sentence as the original sentence was illegal. *Seals*, ¶ 17. Thus, we reversed and directed the sentences imposed on counts II and III to run concurrently and not consecutively. *Seals*, ¶ 20.

¶13     In *Adams*, we followed *Seals*. In October 2005, Adams was found to be a delinquent youth and was committed to the DOC to age 18. In November 2006, under § 41-5-208, MCA, Adams' case was transferred to district court and supervisory responsibility to adult probation services until his 21st birthday. While on youth court probation, Adams committed felony offenses in Missoula and was charged as an adult with those offenses. The State also filed a petition to revoke Adams' probation in his youth case based upon the new charges. Pursuant to a plea agreement, on March 26, 2007, the court in his adult cause committed Adams to a 3-year DOC commitment, all suspended, to run consecutive to the youth revocation disposition to be imposed. At the later youth revocation proceeding he was revoked and committed to the DOC until his 21st birthday. Upon being released on

---

[1] The 1997 version of § 46-18-401(4), MCA, is the same as the current version.

his 21st birthday in November 2009, Adams began serving his adult criminal sentence. In January 2012, the State filed a petition to revoke his suspended adult criminal sentence. Adams sought dismissal of the revocation action, asserting the court did not have the authority to order his adult criminal sentence to run consecutive to the youth revocation sentence to be imposed. *Adams*, ¶¶ 4-10.

¶14 We noted that as Adams had not challenged the 2007 adult criminal sentence until the State filed its petition to revoke, his challenge to that sentence was untimely and he was limited to challenging only the 2012 revocation sentence. Adhering to *Seals,* we again noted:

> [A] sentencing court's authority to re-sentence a criminal defendant based upon an illegal sentence depends upon *when* the illegal sentence is discovered and challenged. If the illegal sentence is challenged while the defendant is serving the sentence, the court has the authority to correct the sentence by imposing a sentence that was statutorily authorized . . . *If, however, the illegal sentence is challenged during a revocation proceeding held while the defendant is serving the suspended portion of the illegal sentence, the court, upon sentencing in the revocation proceeding, is constrained by the particulars of § 46-18-203(7), MCA*.

*Adams*, ¶ 18 (quoting *Seals*, ¶ 15) (emphasis in original). As Adams was challenging a sentence as illegal while serving the suspended portion, we concluded the revocation court could not resentence him under the general sentencing statutes—which includes § 46-18-401, MCA, which generally governs the designation of a sentence as consecutive or concurrent—but was instead constrained to the particulars of the revocation sentencing provisions when correcting any illegality. *Adams*, ¶ 18.

9

¶15 Recently, in *Wolfblack*, we again reiterated that "we have clearly held that § 46-18-401, MCA, is not applicable when a sentence is revoked because the revocation of a suspended or deferred sentence is expressly governed by § 46-18-203, MCA." *Wolfblack*, ¶ 9. Applying our statutory scheme, we concluded that changing the terms of the initial sentence by making it consecutive to a sentence not in existence at the time the original sentence was imposed constituted an illegal sentence under § 46-18-203(7)(a)(iii), MCA, as longer than the original sentence. *Wolfblack*, ¶ 13.

¶16 Keech asserts the DOC erroneously ran his 2009 Lewis and Clark revocation disposition consecutively to his 2008 Yellowstone County sentence. He made the same assertion in both *Keech I* and *Keech III*. As the State recognizes, *Keech I* is inconsistent and at odds with *Seals* and *Keech III* is inconsistent and at odds with *Seals* and *Adams* which we recently adhered to in *Wolfblack*. It is clear the DOC inappropriately used § 46-18-401, MCA, to erroneously run Keech's 2009 Lewis and Clark revocation disposition consecutive to his 2008 Yellowstone County sentence, making the revocation sentence facially illegal under § 46-18-203(7)(a)(iii), MCA. The State advocates that despite the revocation sentence being illegal and despite the holding of *Southwick* that res judicata does not apply when a defendant is subjected to a facially illegal sentence, we should affirm it based on "the law of the case" or "res judicata."

¶17 In *Keech I*, Keech brought a pro se habeas action asserting the DOC erroneously ran his 2009 Lewis and Clark revocation disposition consecutive to his 2008 Yellowstone County sentence. The State responded that the DOC's long-standing practice of the MSP

10

Records Department to follow the default statute—§ 46-18-401, MCA—by operation of law prohibited running the sentences concurrently. The State proclaimed, citing *State v. McGuire*, 260 Mont. 386, 860 P.2d 148 (1993), it is the later sentencing judge that has the authority to make the decision to run sentences concurrently or consecutively. The State, however, failed to cite or address *Seals* or § 46-18-203(7)(a)(iii), MCA, enacted in 2003, which, in essence, made *McGuire* inapplicable to revocation proceedings. Apparently in reliance on the State's assertions, we erroneously applied § 46-18-401, MCA, and *McGuire* to deny Keech's habeas action. After unsuccessfully attempting to withdraw his guilty plea in the Yellowstone County cause asserting he would never have pled guilty had he known the sentences would be run consecutively contrary to his plea agreement, Keech filed another habeas cause again asserting the DOC erroneously ran his 2009 Lewis and Clark revocation disposition consecutive to his 2008 Yellowstone County sentence. In reliance on our order in *Keech I* and the DOC's assertion that Yellowstone County could not run its sentence concurrent to the Lewis and Clark sentence as the Lewis and Clark sentence had not yet been imposed, we again erroneously denied Keech's habeas petition without considering § 46-18-203(7), MCA, or our decisions in *Seals* and *Adams*. Given this background, we are not persuaded that we should use "the law of the case" or "res judicata" to perpetuate our erroneous orders in *Keech I* and *Keech III*, when justice demands otherwise.

¶18 We applied the "interests of justice" exception to principles of collateral estoppel in *Kills on Top v. State*, 279 Mont. 384, 928 P.2d 182 (1996), stating that "'[c]onventional

11

notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.'" *Kills on Top*, 279 Mont. at 400, 928 P.2d at 192 (quoting *Sanders v. United States*, 373 U.S. 1, 8, 83 S. Ct. 1068, 1073 (1963)). Since that time, this Court consistently has held that "a facially invalid sentence 'presents the rare and exceptional situation where the procedural bar of res judicata should not apply because justice demands that we not permit a facially illegal sentence to stand.'" *Ayers v. Seventh Judicial Dist. Ct.*, No. OP 12-0763, 369 Mont. 541, 310 P.3d 1098 (Feb. 26, 2013) (quoting *Southwick*, ¶ 19) (granting writ of habeas corpus and ordering resentencing on 2011 conviction because of illegal persistent felony offender sentence). *See also Bauer v. Guyer*, No. OP 19-0358, Order (Mar. 18, 2020) (granting writ of habeas corpus and remanding for resentencing on 2002 conviction because separate persistent felony offender sentence was facially illegal under *State v. Gunderson*, 2010 MT 166, 357 Mont. 142, 237 P.3d 74); *Kills on Top v. Guyer*, No. OP 18-0656, Order (July 30, 2019) (granting writ of habeas corpus and directing district court to strike the petitioner's 1988 life sentence for felony aggravated kidnapping, the predicate offense for his deliberate homicide conviction, in light of *State v. Russell*, 2008 MT 417, 347 Mont. 301, 198 P.3d 271); *Lott v. State,* 2006 MT 279, ¶ 22, 334 Mont. 270, 150 P.3d 337 (determining incarceration of an individual pursuant to a facially invalid sentence represents a grievous wrong and a miscarriage of justice warranting the ability to challenge its legality through habeas corpus relief). As we said in the 1996 *Kills on Top* decision, "Finality and fairness are both important goals. When faced with an apparent conflict between them, this Court unhesitatingly chooses the latter." *Kills*

12

*on Top*, 279 Mont. at 400, 928 P.2d at 192 (quoting *State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994)) (emphasis in original). As the District Court is constrained to the particulars of the revocation sentencing provisions of § 46-18-203(7), MCA, the Lewis and Clark revocation sentence cannot run consecutively to the Yellowstone County sentence as that would impose a longer term than the original sentence in violation of § 46-18-203(7)(a)(iii), MCA.

¶19 Although Keech has consistently challenged his Lewis and Clark revocation sentence, we erroneously failed to discover its illegality until now, when Keech is challenging his revocation sentence. As such, any relief must come through the revocation proceeding where the court upon sentencing in the revocation is constrained by the particulars of § 46-18-203(7), MCA, to correct any illegality. The State advocates that if this Court determines *Keech I* and *Keech III* were erroneously decided, which we now do, the proper remedy is to reverse the July 12, 2023 order revoking Keech's sentence and amending judgment and remand to the District Court to hold a dispositional hearing where the District Court will be constrained by the particulars of § 46-18-203(7), MCA. Keech asserts there is no need to remand for a new dispositional hearing as all of the time he requests he be credited with is incarceration time, not elapsed time, and we can accurately calculate that time based on the record and the parties' briefs. We agree with Keech in this regard.

¶20 As discussed above, in issuing a revocation disposition sentence the court is constrained by the particulars of § 46-18-203, MCA. Pursuant to § 46-18-203(7)(b), MCA,

13

upon revocation of a suspended sentence "[c]redit must be allowed for time served in a detention center or for home arrest time already served." As we have noted, the disputed time periods at issue in this case are those when Keech was incarcerated. By statute, awarding credit for time served in a detention center is not a discretionary act. Section 46-18-203(7)(b), MCA. None of the disputed time periods in this case involved elapsed time, and the State cannot simply manufacture an illusory elapsed time dispute requiring remand for a fact-finding hearing in its response brief when this Court has been asked to determine credit for time served. While Justice Rice's Concurrence and Dissent "urge[s] the Court to not return to our sentencing factfinding days," Concurrence and Dissent, ¶ 59, that is simply not what the Court is doing in this case. The record reflects when Keech was incarcerated and statute requires Keech be given credit for time served. Those calculations are, indeed, simple and do not involve this Court acting as the factfinder. The "very complicated" record to which Justice Rice refers, Concurrence and Dissent, ¶ 59, may be relevant to elapsed time calculations, but those calculations are not before us here and the State's newfound dispute with the District Court's elapsed time calculation—again, presented for the first time in its appellate response brief after the parties stipulated to the amount of elapsed time below and Keech presented no argument related to elapsed time in his opening brief—has no effect on this Court's ability to do the simple math required to give credit for Keech's incarcerated time.

¶21 Keech asserts he is entitled to 2,251 days of additional credit for time served. The State concedes he is entitled to 892 of those claimed days. The State disputes he is entitled

to 1,212 days of time served before the District Court imposed the second, most recent revocation—353 days from December 15, 2013, to December 2, 2014, and 859 days from August 15, 2015, to December 20, 2017—and various other shorter periods largely based on its continued assertion the Yellowstone County and Lewis and Clark sentences should run consecutively. As the State concedes Keech is at a minimum entitled to an additional 892 days credit for time served, we need not address the incarceration periods upon which Keech and the State agree and limit the below consideration to the disputed time periods of incarceration.

¶22 As discussed above, Keech was sentenced in the Yellowstone County cause in November 2008 to a 5-year DOC commitment to run concurrently to his Lewis and Clark cause. Upon imposition of this sentence the Yellowstone County sentence merged with the Lewis and Clark sentence. *State v. Kortan*, 2022 MT 204, ¶ 18, 410 Mont. 336, 518 P.3d 1283 ("[U]nrelated sentences merge when a district court orders that one runs concurrently with the other."). Subsequently, the suspended portion of Keech's Lewis and Clark sentence was revoked and the court imposed a revocation disposition of 16 years to the DOC, with 11 years suspended and 87 days of credit for time served. As explained above, the District Court was constrained to the particulars of the revocation sentencing provisions of § 46-18-203(7), MCA, thus the Lewis and Clark revocation sentence could not run consecutively to the Yellowstone County sentence without violating § 46-8-203(7), MCA. Therefore, the revocation sentence should have started to run on March 12, 2009, the date it was imposed, and the suspended portion then began to run on December 15,

2013. As such, Keech is entitled to 1,212 days credit for incarceration time he served from December 15, 2013, to December 2, 2014, and from August 15, 2015, to December 20, 2017.

¶23 Keech asserts that because his Yellowstone County and Lewis and Clark sentences merged when the Yellowstone County sentence was imposed in November 2008 to run concurrently to his Lewis and Clark cause, he is entitled to credit for 84 days he served from December 19, 2008 to March 12, 2009. The State asserts he is not entitled to this credit as Keech may not raise issues this Court previously decided in *Keech I* and *Keech III*. As discussed above, we are not persuaded by this assertion. Because the Yellowstone County sentence and the Lewis and Clark sentences merged in November 2008 when the Yellowstone County district court imposed sentence concurrently with the Lewis and Clark sentence, the Lewis and Clark sentence was running during the time period from December 19, 2008, to March 12, 2009, and these 84 days of incarceration must be credited toward Keech's Lewis and Clark revocation sentence. *State v. Souther*, 2022 MT 203, ¶ 13, 410 Mont. 330, 519 P.3d 1 (noting credit applied to one sentence must also be applied to any sentence running concurrently to it).

¶24 Keech asserts he is entitled to credit for time served from May 4, 2008, the date he began serving the 16-year suspended portion of his original sentence, to September 22, 2008. The State asserts this period of credit began 32 days later, on June 5, 2008, the date on which he was served an arrest warrant previously issued April 17, 2008. At the time the warrant was served, Keech was in custody and had been so since March 2008 on the

Yellowstone County cause. In *State v. Crazymule*, 2024 MT 58, 415 Mont. 536, 545 P.3d 66, we held the time served calculation begins on the date the sentencing court gains jurisdiction over the defendant and the defendant was detained subject to that jurisdiction. Further, we recognized that regardless of whether a warrant is served, if it acts as a detainer, then issuance of the warrant is what triggers the issuing court's jurisdiction and its reach over the defendant. *Crazymule*, ¶ 12; *see also State v. Risher*, 2024 MT 309, ¶ 16, 419 Mont. 395, 560 P.3d 1203. Here, the State asserts only that credit from May 4, 2008, to June 5, 2008, should be denied as the warrant was not served until June 5, 2008. The State does not address or dispute the warrant acted as detainer during this disputed time. As such, we conclude Keech is entitled to 32 days credit for time served from May 4, 2008, to June 5, 2008.

¶25    Finally, Keech asserts he is entitled to 31 days of credit for time served in a treatment facility pursuant to a court order from November 23, 2002, to December 23, 2002. Although general sentencing statute § 46-18-403(1)(b), MCA, defines "incarceration" to include "time spent in a residential treatment facility under the order of a court," § 46-18-203(7)(b), MCA, providing the sentencing structure for revocations, requires credit only for "time served in a detention center or for home arrest time already served." As we noted in *Tippets*, ¶ 19, the term "detention center" is not defined in Title 46 despite its appearance in § 46-18-203(7)(b), MCA. Under § 1-2-107, MCA, "[w]henever the meaning of a word or phrase is defined in any part of th[e] code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention

17

plainly appears." Thus, we applied the definition of "detention center" as "a facility established and maintained by an appropriate entity for the purpose of confining arrested persons or persons sentenced to the detention center" contained in § 7-32-2241(1), MCA, to § 46-18-203(7)(b), MCA. *Tippets*, ¶ 19. This definition does not incorporate time spent in a treatment facility pursuant to a court order. As such, Keech is not entitled to credit for 31 days for time served in a treatment facility from November 23, 2002, to December 23, 2002.

## CONCLUSION

¶26 Based on the foregoing, we reverse the District Court's July 12, 2023 Order Revoking Defendant's Sentence and Amended Judgment and Commitment and remand for the District Court to amend the judgment to grant an additional 2,220 days credit for time served in addition to the 62 days credit for time served from February 24, 2023, to April 7, 2023, and the 1,167 days credit for elapsed time originally ordered by the court in its July 12, 2023 order and judgment.

/S/ INGRID GUSTAFSON

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

18

Justice Laurie McKinnon, concurring.

¶27 I agree with the Court's analysis. It is our constitutional obligation to consider the amount of credit Keech is entitled to when the record, as here, is adequate and Keech asserts a facially invalid sentence. We have noted that, "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." *Kills On Top v. State*, 279 Mont. 384, 400, 928 P.2d 182, 192 (1996) (quoting *Sanders v. U.S.*, 373 U.S. 1, 8, 83 S. Ct. 1068, 1073 (1963)). This Court has held that other procedural bars, such as limitations on habeas proceedings, may not apply when a defendant's sentence is facially illegal. *Lott v. State*, 2006 MT 279, ¶¶ 20-22, 334 Mont. 270, 150 P.3d 337. As we stated in *Lott*, "'incarceration of an individual pursuant to a facially invalid sentence represents a 'grievous wrong,' and a 'miscarriage of justice'" that warrants relief even if the defendant is otherwise procedurally barred. *Lott*, ¶ 22 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721 (1993); *State v. Perry*, 232 Mont. 455, 462, 758 P.2d 268, 273 (1988)).

¶28 Regarding the Dissents' discussion of our recent decision in *Wolfblack*, I would simply point out that *Wolfblack* interpreted the portion of § 46-18-203(7)(a)(iii), MCA, that held a sentence imposed upon revocation cannot be "a longer imprisonment or commitment term than the original sentence. . . ." That portion of § 46-18-203(7)(a)(iii), MCA , remains intact and has not been abrogated by the Legislature. In *Wolfblack*, we held that running a revocation sentence consecutively to a sentence not in existence when the original sentence was imposed constituted an illegal sentence under § 46-18-203(7)(a)(iii), MCA.

19

*Wolfblack*, ¶¶ 14-16. Wolfblack's "commitment term" had been extended by more than ten years beyond the commitment term of his initial sentence. *Wolfblack*, ¶ 13. Essentially, Wolfblack was serving a "commitment term" in perpetuity. *Wolfblack* is the law, and stare decisis cannot depend on the current composition of the Court or it will mean nothing; we will be without rules of law and consistency. In his Dissent, Chief Justice Swanson suggests overruling *Wolfblack*, even though no party has asked us to, but finds it unnecessary because the Legislature has come "to our rescue." Dissent, ¶ 15. Citing "[t]wo important policies . . . of the law of the case doctrine: judicial economy and finality of judgments[,]" Dissent, ¶ 3, the Chief Justice would bind a defendant to what this Court knows is a facially illegal sentence under "the law of the case," but would not bind the Court to the rule of law under the doctrine of stare decisis, a doctrine equally based on those same underlying policies of finality and judicial economy.

¶29 The 2025 Legislature attempted to amend § 46-18-203(7)(a)(iii), MCA, by *adding* "[a] sentence imposed upon revocation must run consecutively to any other previously existing sentence unless the suspended or deferred sentence that is being revoked ran concurrently to the previously existing sentence. . . ." Whether this amendment accomplishes anything remains to be seen. The additional language appears inconsistent with the language that remains in the subsection this Court interpreted in *Wolfblack*. If a challenge is made to -203, language within the subsection will have to be construed consistently together—not only within the subsection itself, but with other Code provisions and our caselaw, indeed the same caselaw correctly cited in *Wolfblack* and by the Court

20

today. The amendment appears to be unclear as to what constitutes a "previously existing sentence." *Wolfblack* held that a revocation sentence could not be consecutive to a sentence that had not previously been imposed or was not in existence at the time of the initial sentence. *Wolfblack*, ¶¶ 14-16. I suspect that more arguments will be brought forth to the Court in construing the amendment to § 46-18-203(7)(a)(iii), MCA.

¶30 Thus, in my view and contrary to the Dissents', the amendment to § 46-18-203(7)(a)(iii), MCA, is far from clear and will require this Court to consider the statute as a whole, consistent with other statutory provisions and our established case law.

/S/ LAURIE McKINNON

Chief Justice Cory J. Swanson, concurring and dissenting.

¶31 I agree with the Opinion that the statute does not expressly grant Keech credit for time served in a treatment facility on a revocation sentencing. I otherwise dissent from the Opinion. Law of the case and our holding in *Adams* preclude us from even entertaining Keech's argument, and the Court's reliance on *Wolfblack* perpetuates its error of law. I would affirm the District Court.

¶32 This is Keech's fourth attempt to convince us the District Court sentenced him illegally so many years ago. We have repeatedly assessed all his facts and arguments on three prior occasions, and rejected them. He is bound by the law of the case.

¶33 "'When this Court, in deciding a case presented, states a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case and must be

21

adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.'" *Diaz v. State*, 2013 MT 219, ¶ 32, 371 Mont. 214, 308 P.3d 38 (quoting *Winslow v. Mont. Rail Link, Inc.*, 2005 MT 217, ¶ 30, 328 Mont. 260, 121 P.3d 506); *see also Carlson v. N. Pac. Ry.*, 86 Mont. 78, 81, 281 P. 913, 914 (1929). Two important policies underlie the law of the case doctrine: judicial economy and finality of judgments. *State v. Gilder*, 2001 MT 121, ¶ 10, 305 Mont. 362, 28 P.3d 488. While the doctrine is discretionary, I would apply it here where Keech has already had three bites at the apple and where the prior ruling was not clearly in error. *Accord VanBuskirk v. Gehlen*, 2021 MT 87, ¶ 15 n.15, 404 Mont. 32, 484 P.3d 924.

¶34    In *Keech I* in 2012, we affirmed the DOC's sentence calculation that imposed the First Judicial District's revocation sentence consecutive to Keech's sentence from the Thirteenth Judicial District. In *Keech II* in 2013, we affirmed the Thirteenth Judicial District Court's denial of Keech's petition for postconviction relief, wherein he argued he had been illegally sentenced to two consecutive sentences instead of concurrent sentences. In *Keech III* in 2013, we affirmed the First Judicial District Court's disposition on Keech's revocation and reimposition of sentence, finding his Lewis and Clark County sentence was correctly imposed consecutively to his Yellowstone County sentence. Now, suddenly, in *Keech IV*, we not only say he was correct and order the sentences to be imposed concurrently, but we say we were wrong on three prior occasions. And when did we "discover" we were wrong? Eleven years after *Keech III*, when we decided *Wolfblack*. In point of fact, Keech's prior cases were correctly decided and only came into question after *Wolfblack* changed the law and muddied a previously clear ruling.

22

¶35 This Court will rue the day when we decided there is no such thing as a final appeal or a final decision on a case. We will encourage every litigant to keep on trying if they don't like the answer they receive the first, second, or third time, until we inevitably change our minds and give them a different answer.

¶36 We were right on three prior occasions when we had all the facts of Keech's sentences that we have today. We should not countermand our prior rulings on this simple matter of interpreting a court's sentencing authority. Judicial economy and finality of judgment should matter for something.

¶37 The second reason I dissent is because today we have extended an erroneous legal interpretation in *Wolfblack* that has created the uncertainty and havoc Justice Rice predicted in his dissent on that case. *Wolfblack* partially ignored and partially misapprehended our precedent in *Seals* and *Adams* to hold a district court imposing a sentence upon revocation could not order the sentence consecutive to a different district court's sentence because that was beyond that proceeding's ambit and doing so would extend the overall length of the defendant's sentence. *Wolfblack*, ¶¶ 9, 14.

¶38 *Seals* dealt with a situation where a court had initially illegally sentenced a defendant to 10 years for two crimes with statutory maximums of five years each. *Seals*, ¶ 4. The court used its discretion to make those two illegal sentences concurrent to each other pursuant to § 46-18-401, MCA. *Seals*, ¶ 14. Unless a court orders otherwise, separate sentences run consecutively. Section 46-18-401(1)(b), (4), MCA. When a defendant is serving a suspended sentence and is sentenced on a new crime, that sentence runs consecutive to the defendant's suspended sentence as a matter of law—unless the

23

sentencing court orders otherwise. *Seals*, ¶¶ 4, 10, 14. Upon revocation of his sentence, the District Court recognized it could not reimpose illegal 10-year sentences and instead imposed five-year sentences on the two convictions but changed the sentences from concurrent to consecutive to each other. *Seals*, ¶¶ 5, 11. Pursuant to the version of § 46-18-203(7)(c), MCA (1997), in effect at the time, a court on revocation of a suspended sentence could "require the defendant to serve either the sentence imposed or any lesser sentence." The *Seals* district court could not reimpose the original sentence because it was illegally twice the statutory limit. That left it with only the option of revoking the previous sentence and imposing a lesser sentence—five years each on two counts, concurrent to each other. *Seals*, ¶¶ 17–18.

¶39 *Seals* does not stand for the proposition the Court assigns to it in *Wolfblack* and here. *Seals* dealt only with a previously illegal sentence, which, upon revocation, could not be cured to fashion the sentencing court's original intended effect of having a longer probation period for the defendant. Once the sentencing court corrected the length of the sentence (to 5 years instead of 10), it could not contradict the original sentence term of concurrent sentences by making them consecutive. The two counts sentenced in *Seals* were in the same court and the same case, not different courts and different cases as Keech presents. *Seals* does not affect Keech's situation or compel *Wolfblack's* holding.

¶40 *Adams*, meanwhile, merely stands for the proposition that a defendant may not challenge the legality of a sentence after it has been revoked; the challenge is limited to the sentence imposed upon revocation. *Adams*, ¶¶ 17–20. We cited dicta from *Seals*, ¶ 15, in stating, "§ 46-18-401, MCA, which governs the designation of a sentence as consecutive

24

or concurrent, is not part of the revocation sentencing provisions."[1] *Adams*, ¶ 19. We nevertheless explained we did not reverse in *Seals* because the district court violated § 46-18-401, MCA, in ordering the two sentences consecutive to each other, but because it had violated § 46-18-203(7), MCA, by imposing a greater term of sentence than originally imposed. *Adams*, ¶ 19 n.4. Notably, we affirmed the revoked sentence in *Adams*.

¶41 The rule to take from these two cases, then, is when a court revokes a suspended sentence and reimposes a new sentence, it may not impose a sentence *on that charge* which "includes a longer imprisonment or commitment term than the original sentence" pursuant to § 46-18-203(7)(a)(iii), MCA. As we held in *Seals*, if the court originally sentenced a defendant to concurrent sentences, it may not make those sentences consecutive upon revocation, *because that automatically extends the commitment term on whichever count was changed from concurrent to consecutive*. And if a defendant wishes to challenge the consecutive or concurrent nature of two or more sentences, he or she must do so before the sentence has expired or before being sentenced on a revocation. *Adams*, ¶¶ 18–20.

---

[1] This sentence is dicta in *Seals* and is accurate as applied directly to his situation. It should not be over-applied to the entirety of § 46-18-203(7), MCA, proceedings. Upon revocation and resentencing, the district court can sentence a person on a suspended sentence to "either the sentence imposed or *any sentence that could have been imposed*"; for a person on a deferred imposition of sentence, the court can "impose any sentence that *might have been originally imposed*." Section 46-18-203(7)(a)(iii), (iv), MCA (emphasis added). Both of these italicized provisions necessarily incorporate all the applicable sentencing statutes in Titles 45, 46, 61, 87, MCA, or others, including consecutive or concurrent provisions, so long as they do not violate the restriction on imposing a longer imprisonment or term of commitment than the original suspended sentence. The statute does not support a blanket holding that consecutive or concurrent provisions are entirely outside the scope of revocation proceedings.

¶42    The Court misapplied both of these cases in deciding *Wolfblack*.  In addition to the correct analysis in Justice Rice's dissent, it is worth noting Wolfblack challenged the consecutive nature of his sentence on a revocation proceeding, exactly what we held he could not do in *Seals* and *Adams*.  *Wolfblack*, ¶¶ 5–6.  "The general authority to designate a sentence to run concurrently is not within 'the particulars' of the revocation statutes and is not an issue that could be addressed or 'corrected' during the 2012 revocation proceedings."  *Adams*, ¶ 19 (quoting *Seals*, ¶ 15).  Today, the Court repeats its *Wolfblack* mistake by entertaining Keech's challenge to his consecutive sentence on a revocation proceeding, in contravention of the holding in *Adams*.  Does the Court impliedly overrule *Adams* and *Seals* today?

¶43    The *Wolfblack* Court also incorrectly interpreted *Seals* and § 46-18-203(7)(a)(iii), MCA, to hold a court could not revoke a suspended sentence and re-sentence a defendant if the net effect was a longer overall sentence on that case by virtue of being consecutive to a new sentence from a different case.  *Wolfblack* cited *State v. Frazier*, 2001 MT 210, ¶ 15, 306 Mont. 358, 34 P.3d 96, without noting it applied the 1987 revocation statutes, which had evolved greatly by the time *Wolfblack* was decided.  *Frazier* stated, "the court's authority encompasses the power to reimpose the original sentence via a combination of imprisonment and suspension, both totaling no greater than the length of the original sentence."  *Frazier*, ¶ 15.  Then later *Frazier* held the district court could determine on a revocation whether to impose the sentences concurrently or consecutively, and in fact remanded the case back to the district court to make that determination.  *Frazier*, ¶¶ 19–20.  Clearly, it was applying a statute from a different era, which had changed greatly by

26

2024. Yet this apples citation from *Frazier*, selectively applied to oranges in *Wolfblack*, is what led the latter majority to hold the revocation sentence "could not be a longer term of commitment than the initial sentence. Changing the sentence to make it consecutive increased the original sentence." *Wolfblack*, ¶ 14.

¶44 This is absurd, as Justice Rice pointed out in his dissent. The *term* of the sentence remained five years upon revocation, the District Court did not increase it. The overall *duration* of the sentence was longer because Wolfblack received a new, partially custodial sentence in Lewis and Clark County on a new criminal offense, which ran until it was discharged in 2021. *Wolfblack*, ¶ 6. Wolfblack then resumed serving the remainder of his original suspended sentence from Flathead County, which was subsequently revoked and led to his appeal. *Wolfblack*, ¶ 6. The *Wolfblack* Court attempted to save the defendant from the logical consequences of repeat criminal activity: he will receive new sentences that inevitably stack up and extend his time in custody or on probationary supervision. In doing so, the Court committed manifest error.

¶45 However, I need not convince the Court to recognize its error and overrule its holding in *Wolfblack*. The Legislature came to our rescue. "If the Legislature disagrees with our interpretation of a statute, it is free in the exercise of its constitutional prerogative to override our interpretation and effect the proper legislative intent." *S.W. v. State*, 2024 MT 55, ¶ 21, 415 Mont. 437 (citing *State v. Spagnolo*, 2022 MT 228, ¶ 8, 410 Mont. 457, 520 P.3d 330; *State v. Running Wolf*, 2020 MT 24, ¶ 23, 398 Mont. 403, 457 P.3d 218) (cleaned up); *see also Running Wolf*, ¶¶ 21–25 (highlighting when manifestly wrong decisions should not be followed and discussing postdecision legislative amendments as

instructive); *Bottomly v. Ford*, 117 Mont. 160, 167–68, 157 P.2d 108, 112 (1945) ("Generally, of course, legislative intent is indicated by its action rather than by its failure to act."); Shambie Singer & Norman J. Singer, *3C Sutherland Statutes & Statutory Construction* § 78:4 (8th ed.) ("Conversely, when a legislature amends a statute following a judicial decision construing the statute, courts presume the legislature amended the statute with that decision in mind." (collecting cases)).

¶46　In the legislative session following *Wolfblack*, the Legislature amended §§ 46-18-203(7)(a)(iii) and -401(5), MCA, to clearly state any sentence imposed upon revocation "must run consecutively to any other previously existing sentence unless the suspended or deferred sentence that is being revoked ran concurrently to the previously existing sentence." 2025 Mont. Laws ch. 324. Representative Overstreet, the legislation's sponsor, made clear the bill was brought "to fix something that the Montana Supreme Court did in a case called *Wolfblack*." *Hearing on H.B. 612, before House Jud. Comm., 69th Leg. Reg. Sess.* at 9:40:02–9:40:05 (Feb. 26, 2025).

¶47　It appears our interpretation of § 46-18-203(7)(a)(iii), MCA, in *Wolfblack* is manifestly wrong and we should take this opportunity to recognize the Legislature's act to overrule it. *Accord Running Wolf*, ¶ 22. Barring that act of judicial self-correction, we can merely hold on until the effective date of the legislative amendment.

¶48　As applied to Keech, this Court should reject his argument to change a consecutive or concurrent sentence on a revocation appeal, because it is barred by *Adams* and by the law of the case, as argued above. Even if we were to consider its merits, we should hold the District Court legally sentenced him upon revocation and the DOC properly construed

the sentence to run consecutively to his new criminal sentence imposed in Yellowstone County as a matter of law, pursuant to § 46-18-401, MCA. As we correctly held in *Seals*, the revocation statutes do not allow a court to change sentences from concurrent to consecutive in an individual case. But that holding does not extend to preventing a court from imposing a revocation sentence consecutive to a new criminal sentence in a different case. *See* Dissent, ¶ 40 n.1. This is consistent with, indeed compelled by, the Legislature's recent action to correct our error. It also happens to be consistent with this Court's correct resolution of this case on three prior occasions.

¶49 Finally, any changes to Keech's sentence should come from a district court recalculation of this complicated record, not from this Court's calculations. Even if the Court does not adopt my reasoning, it should remand the matter to the District Court rather than grant credit that may be incorrect on Keech's fourth (and hopefully final) trip to the Supreme Court.

/S/ CORY J. SWANSON

Justice Jim Rice, concurring in part and dissenting in part.

¶50 While the Court's opinion and the Chief Justice's Dissenting opinion reach different conclusions, both opinions state principles about the application of res judicata, or preclusion of re-litigated claims in criminal cases, which are correct. I endeavor herein to fill in what I perceive are gaps between the opinions to illustrate that point, and to offer an application of those principles to this case.

¶51    The Court's opinion focuses on what it terms the interest of justice "exception" to the application of preclusion principles. Opinion, ¶ 18. The Court states that a facially invalid sentence "presents the rare and exceptional situation where the procedural bar of res judicata should not apply because justice demands that we not permit a facially illegal sentence to stand." Opinion, ¶ 18 (citing *Ayers v. Seventh Judicial Dist. Ct.*, No. OP 12-0763, 369 Mont. 541, 310 P.3d 1098 (Feb. 26, 2013)). Focusing upon an "exception" without providing the broader context of the general rule may give the impression that the "exception" *is* the rule, i.e., that res judicata is never or rarely applicable, either in criminal cases generally, or in sentencing cases specifically. That would be an incorrect assessment of the law. The Dissent is correct that res judicata or other preclusion principles may properly bar certain criminal claims.[1] *See Montgomery v. State*, 2016 MT 169, ¶ 13, 384 Mont. 120, 375 P.3d 403 ("Montgomery has previously raised the same arguments he now raises as to the legality of his convictions and sentences. '[C]laim preclusion' refers to the preclusive effect of a judgment and forecloses litigation of matters that should have been raised in earlier, timely proceedings." (citing *State v. Perry*, 232 Mont. 455, 464, 758 P.2d 268, 274 (1988) (internal citation omitted), *overruled in part on other grounds, State v. Clark*, 2005 MT 330, ¶¶ 30-32, 330 Mont. 8, 125 P.3d 1099 ("[O]nce a party has had full opportunity to present a claim or issue for judicial decision in a given proceeding, the judgment of that court will be deemed final as to all

---

[1] As we explained in *Southwick*, regarding successive litigation in the criminal context, "whether labeled res judicata or law of the case, the effect is the same." *Southwick*, ¶ 15, n.1 (citing *State v. Van Dyken*, 242 Mont. 415, 426, 791 P.2d 1350, 1356 (1990)).

claims or issues which have been raised or which fairly could have been raised.”))).  Indeed, as noted in the Court's articulation of the governing standards, it is to be the “rare and exceptional situation” where res judicata does *not* apply.  Opinion, ¶ 18; *Southwick*, ¶ 19.

¶52 The Court cites the statement in *Kills on Top*, 279 Mont. at 400, 928 P.2d at 192, that “[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.”  Opinion, ¶ 18.  This statement is correct, but placed in  context, the Court was there speaking narrowly to death penalty claims at issue in that case, and, in contrast, applied res judicata to bar all of the Defendant's other claims—which also alleged infringement of constitutional rights that deprived the Defendant of life and liberty—because “the ends of justice are not served by reaching the merits of the petitioner's claims a second time.  Therefore, the District Court's conclusion that petitioner's claims numbered 1, 4, 5, 9, 10, and 14 are barred by *res judicata* is affirmed.” *Kills on Top*, 279 Mont. at 400, 928 P.2d at 192.  *Kills on Top* well illustrates that res judicata is a broadly governing principle in the criminal law.

¶53 The general rule is that “[w]e apply res judicata to bar re-litigation of issues in criminal cases.”  *Southwick*, ¶ 17.  In *Montgomery*, we articulated the applicable test as drawn from our case precedent:

> The doctrine of res judicata bars relitigation of issues in criminal cases if three criteria are met:
>
> > (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application,
>
> > (2) the prior determination was on the merits, and

> (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Montgomery*, ¶ 12 (citing *Kills on Top*, 279 Mont. at 399, 928 P.2d at 192; *Southwick*, ¶ 17; *State v. Baker*, 272 Mont. 273, 282, 901 P.2d 54, 59 (1995)).  Thus, the interest of justice "exception" referenced by the Court is also the third factor of the test a court must consider in making a res judicata determination.  The test includes two objective factors, that the "same ground" was previously "determined adversely," and that the determination was "on the merits"; and one factor that is essentially subjective, a discretionary assessment by the court of the case circumstances to determine whether "the ends of justice would not be served by reaching the merits" a second time.  *Montgomery*, ¶ 12.

¶54    In cases like Keech's, involving sentence credit for time served, a critical consideration for a court's assessment of the "ends of justice" factor is the constitutional right of habeas corpus.  The Court discussed the habeas writ extensively in *Lott*, as related to a challenge to a statutory provision procedurally barring habeas relief to a person "who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal."  Section 46-22-101(2), MCA; *Lott*, ¶¶ 18-22.  The Court concluded that, "as applied to a facially invalid sentence—a sentence which, as a matter of law, the court had no authority to impose—the procedural bar created by § 46-22-101(2), MCA, unconstitutionally suspends the writ."  *Lott*, ¶ 22; *Southwick*, ¶ 18; *see* Mont. Const. art. II, § 19 ("The privilege of the writ of habeas corpus shall never be suspended.").  The Court extended habeas relief to incarcerated persons who demonstrated they were not properly credited for time served toward their sentences in a manner that would affect their

date of release from incarceration. *See MacPheat v. Mahoney*, 2000 MT 62, ¶ 5, 299 Mont. 46, 997 P.2d 753 ("MacPheat contends that, had he received all of the good-time credit to which he was entitled, he would have discharged his sentence on January 5, 2000. . . . If, in fact, MacPheat has discharged his sentence but is still imprisoned, then habeas corpus relief is available as he is being unlawfully imprisoned and restrained of his liberty."). Thus, a claim for service credit toward a sentence can implicate the right of habeas corpus, and thereby also satisfy the "ends of justice" consideration which prevents the application of res judicata. "When a criminal defendant is potentially subject to a facially illegal sentence, the ends of justice suggest that res judicata should not bar rehearing of the issues, even if the first two criteria are met." *Southwick*, ¶ 17.

¶55    However, that the constitutional right of habeas corpus is not subject to general suspension does not mean that courts are handcuffed and forced to consider issues that were previously addressed and resolved on the merits in every claim or proceeding. Courts need not be subjected, for example, to repetitive successive litigation or frivolous legal claims that can abuse the judicial system. *See Kills on Top*, 279 Mont. at 398-99, 928 P.2d at 191 (citations omitted) ("The doctrine of *res judicata* bars reconsideration in a post-conviction relief proceeding of claims previously raised and considered on direct appeal," citing judicial finality and economy as the policies undergirding the doctrine.). As *Southwick* stated, a claimed facially illegal sentence "suggests" that res judicata is not applicable; it does not *mandate* such a conclusion in all cases. *Southwick*, ¶ 17. We have commonly applied res judicata to bar repetitive litigation, including to claims of a facially illegal sentence, and have done so even within a habeas proceeding. In *Rodriguez v.*

33

*Salmonsen*, the Defendant filed a petition for habeas relief, challenging his sentence as illegal, along with raising other claims. *Rodriguez v. Salmonsen*, No. OP 23-0227, 412 Mont. 552, 530 P.3d 1270 (May 2, 2023). We explained that "this Court recently addressed these same arguments last year," and "determined that Rodriguez's arguments lack merit." Citing *Montgomery*, we explained that, while Rodriguez was challenging the legality of his sentence in a habeas proceeding, his claims were nonetheless barred by res judicata:

> The doctrine of *res judicata* is typically inapplicable in habeas corpus proceedings. *Montgomery v. State*, 2016 MT 169, ¶ 11, 384 Mont. 120, 375 P.3d 403. We point to the exception, applicable here.
>
>> We have stated that "*[r]es judicata* cannot be applied in such a manner as to deprive [a petitioner] of the right to file a post-conviction procedure. However, res judicata can be used to bar the rehearing of issues already litigated under the rule in *Sanders*." *Coleman [v. State]*, 194 Mont. [428,] 438, 633 P.2d [624,] 630 (citing *Sanders [v. United States]*, 373 U.S. [1,] 15, 83 S. Ct. [1068,] 1077, 10 L. Ed. 2d 148). *See Dawson v. State*, 2000 MT 219, ¶ 162, 301 Mont. 135, 10 P.3d 49 ("The doctrine of *res judicata* may also pose a procedural bar to postconviction relief."). [(Emphasis added.)]
>
> *Montgomery*, ¶ 11. We conclude that the doctrine of *res judicata* applies because Rodriguez continues to raise arguments already litigated.

*Rodriguez*, **3-4. Indeed, in *Kills on Top*, we explained that we had applied res judicata to deny review of arguments challenging a death sentence when the arguments had previously been resolved on the merits. *See Kills on Top*, 279 Mont. at 399, 928 P.2d at 191 ("The doctrine of *res judicata* has, in fact, been extended to petitions for postconviction relief in death penalty cases in spite of the argument that '[t]he Due Process clause of the Fourteenth Amendment requires greater reliability of judgments in capital cases.'" (citing *Fitzpatrick v. State*, 194 Mont. 310, 317, 638 P.2d 1002, 1006 (1981))).

¶56 Keech's appeal includes a new claim for the time served prior to his original sentencing in January 2003. Although it involves a relatively small amount of time, the claim helps to illustrate the principles at issue here. The Dissent correctly notes that a defendant cannot use a revocation proceeding to challenge an originally imposed sentence, and can only timely challenge the revocation sentence at issue. Dissent, ¶¶ 41-42. The Court notes the same principle. Opinion, ¶ 14 (discussing *Adams*). Thus, Keech's request for additional service credit toward his original sentence should not be addressed in this appeal. He may well have a habeas corpus claim for that credit, but even then he must satisfy his burden to demonstrate that the ends of justice would be served by reaching the issue, given the litigation history. Keech's claim for this time served was immediately objectionable and then appealable, but he did neither. In the following 22 years, Keech litigated his sentences repeatedly, and had multiple opportunities to make this claim, but did not, thus raising the possible application of res judicata: "once a party has had full opportunity to present a claim or issue for judicial decision in a given proceeding, the judgment of that court will be deemed final as to all claims or issues which have been raised *or which fairly could have been raised*." *Perry*, 232 Mont. at 464, 758 P.2d at 274 (emphasis added); *see Montgomery*, ¶ 13.

¶57 The bulk of Keech's claim for additional service credit is premised upon his contention that his sentences were to run concurrently instead of consecutively, despite our decisions to the contrary in *Keech I* and *Keech III*. The Dissent makes insightful points about the application of § 46-18-401, MCA, and the Court's decisions in *Seals*, *Adams*, and *Wolfblack*. The State does not ask for *Wolfblack* to be overruled, although as the

35

Dissent notes, it has been legislatively overruled, and we wait for the effective date of the correction. The State does express its disagreement with "the [*Wolfblack*] Majority's [] conclusion that the revocation court improperly changed Wolfblack's sentence to run consecutively." This point is one that distinguishes *Wolfblack* from this case and provides for me a reason that the ends of justice compel that we reach the merits and not apply res judicata. The subsequent sentence in *Wolfblack* was to run *consecutively* to Wolfblack's original sentence as a matter of law, a conclusion from which the Court departed. Here, as we have now determined, Keech's subsequent sentence was to run *concurrently* to his original sentence as a matter of law. Our decisions to the contrary in *Keech I* and *Keech III* were, in effect, a misapplication of the statutes that we are here correcting. And, of course, any disagreement I or the Legislature may have with any of the Court's decisions should not inure to Keech; he is entitled to the benefit of those decisions as long as they are in effect.

¶58 What further convinces me is that the concurrent or consecutive nature of Keech's March 2009 revocation sentence was not evident from the face of that judgment. Had that judgment stated that it was ordered to run consecutively with his November 2008 Yellowstone County sentence, Keech could have challenged that provision on appeal. However, the judgment was silent, and there was essentially nothing to appeal in that regard. Rather, it was not until the Department of Corrections administratively deemed the sentences to run consecutively that Keech became aware of the issue, and he responded by properly filing a petition for habeas corpus challenging the Department's determination. His petitions led to our decisions in *Keech I* and *Keech III*, which were incorrect.

Consequently, I believe Keech has established that the ends of justice require that res judicata not be applied in his case.

¶59 However, I agree with the State's argument that the case be remanded for further proceedings and would so order. As the State notes, the record in this case is very complicated, made so by Keech's continuous criminal behavior over many years. The calculations in this case are not simple. At the hearing herein, the parties stipulated to the amount of lapsed time based upon their mutual assumption that the 2009 revocation sentence correctly ran consecutively with the Yellowstone County sentence. Given this Court's determination, a new judgment must be entered and new calculations made for which the parties may once again find agreement. If not, any issues may be brought to the District Court as factfinder. This Court should not undertake its own factfinding, particularly in cases this complex. I remember well the time when justices sat in their offices, with high piles of sentencing documents, but without the assistance of habeas staff, and performed individual calculations of good time sentencing credits with paper and calculator, in order to respond to habeas petitions. The task took substantial time from other judicial duties, and demonstrated well that an appellate court is not designed to be a factfinder by committee, leading the Court to, initially, order habeas petitions to be filed with districts courts, followed by reversing course and ordering the Department of Corrections to make initial good time credit calculations for the Court's review.[2] While

---

[2] Ultimately, the Legislature repealed the good time statute.

thankful for the Legislature's funding of a necessary habeas staff position, I would urge the Court to not return to our sentencing factfinding days.

¶60    I concur and dissent.

/S/ JIM RICE